THERESA HIGGINS, ADMINISTRATRIX (ESTATE OF STEPHANIE FREEMAN), ET AL. *v.* HERBERT KARP, EXECUTOR (ESTATE OF ETHEL KARP), ET AL.

HERBERT KARP, EXECUTOR (ESTATE OF ETHEL KARP) *v.* DRZISLAV CORIC, ADMINISTRATOR (ESTATE OF ROBERT FREEMAN)
(15435)
(15441)

Callahan, C. J., and Borden, Berdon, Norcott, Katz, Palmer and McDonald, Js.

Argued October 29, 1996—officially released January 28, 1997

*Wesley W. Horton,* with whom were *Susan M. Cormier* and *Paul A. Lange,* for the appellant (defendant Drzislav Coric, administrator of the estate of Robert Freeman).

*Eric P. Smith*, with whom were *Stephen I. Traub, David Thomas Ryan* and, on the brief, *Bradford S. Babbitt*, for the appellees (plaintiffs).

*Richard Blumenthal*, attorney general, and *Carolyn K. Querijero*, assistant attorney general, filed a brief for the attorney general as amicus curiae.

*Steven D. Ecker* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Jack G. Steigelfest* filed a brief for the Connecticut Defense Lawyers Association as amicus curiae.

NORCOTT, J. The dispositive issue in this appeal is the extent to which the trial court, in ruling on motions to set aside defaults entered against the defendant for failure to plead, may attribute the conduct of the defendant's insurer to the defendant. The appeal of the defendant Drzislav Coric, the administrator of the estate of Robert Freeman, arises from the April 12, 1993 crash of a Piper aircraft en route from Groton, Connecticut, to Cortland, New York. The plane crashed near Ithaca, New York, on approach to Cortland airport during inclement weather conditions. Three of the five people on board the plane died, including the two pilots, Robert Freeman and Ethel Karp, and a rear seat passenger, Stephanie Freeman, the daughter of Robert Freeman.

On February 19, 1994, the plaintiff, Theresa Higgins, the mother of Stephanie Freeman, brought, both individually and as administratrix of her daughter's estate, the first action in this appeal against Herbert Karp, the executor of the estate of Ethel Karp, and against Coric.[1] Higgins alleged on behalf of her daughter's estate that the negligence of Ethel Karp and Robert Freeman had

---

[1] The initial complaint also named as defendants E.G. & H., Inc., the owner of the aircraft, and Gary M. Bertman, one of the directors and stockholders of E.G. & H., Inc. The claims against these two defendants, however, were subsequently withdrawn on March 15, 1995.

caused the wrongful death of her daughter.[2] Higgins also individually alleged a claim of loss of filial consortium against Ethel Karp and Robert Freeman.[3] In his answer to Higgins' complaint, Herbert Karp cross claimed against Coric for contribution and indemnification. On May 17, 1994, Herbert Karp, as executor of the estate of Ethel Karp, brought the second action involved in this appeal against Coric for the wrongful death of his wife. On July 21, 1994, pursuant to General Statutes § 52-192a,[4] Higgins, both individually and in her capacity

[2] Stephanie Freeman was domiciled in New York where her estate is being administered.

[3] Ethel Karp and Robert Freeman were domiciled in Connecticut where their estates are being administered.

[4] General Statutes § 52-192a provides: "(a) After commencement of any civil action based upon contract or seeking the recovery of money damages, whether or not other relief is sought, the plaintiff may before trial file with the clerk of the court a written 'offer of judgment' signed by him or his attorney, directed to the defendant or his attorney, offering to settle the claim underlying the action and to stipulate to a judgment for a sum certain. The plaintiff shall give notice of the offer of settlement to the defendant's attorney, or if the defendant is not represented by an attorney, to the defendant himself. Within thirty days after being notified of the filing of the 'offer of judgment' and prior to the rendering of a verdict by the jury or an award by the court, the defendant or his attorney may file with the clerk of the court a written 'acceptance of offer of judgment' agreeing to a stipulation for judgment as contained in plaintiff's 'offer of judgment'. Upon such filing, the clerk shall enter judgment immediately on the stipulation. If the 'offer of judgment' is not accepted within thirty days and prior to the rendering of a verdict by the jury or an award by the court, the 'offer of judgment' shall be considered rejected and not subject to acceptance unless refiled. Any such 'offer of judgment' and any 'acceptance of offer of judgment' shall be included by the clerk in the record of the case.

"(b) After trial the court shall examine the record to determine whether the plaintiff made an 'offer of judgment' which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain stated in his 'offer of judgment', the court shall add to the amount so recovered twelve per cent annual interest on said amount, computed from the date such offer was filed in actions commenced before October 1, 1981. In those actions commenced on or after October 1, 1981, the interest shall be computed from the date the complaint in the civil action was filed with the court if the 'offer of judgment' was filed not later than eighteen months from the filing of such complaint. If such offer was filed later than eighteen months from

as administratrix of her daughter's estate, filed a $2 million offer of judgment against Coric and another $2 million offer of judgment against Herbert Karp.[5] Neither Coric nor Karp accepted Higgins' offers of judgment. In their respective actions against Coric, both Higgins and Karp moved for, and were granted, defaults for failure to plead.

On May 19, 1995, Coric moved, pursuant to Practice Book § 376,[6] to set aside the two defaults entered against him. The trial court denied Coric's motions and, on June 9, 1996, the court issued a memorandum of decision addressing the reasons for the denial. On June 12, 1996, Coric submitted his notice of defenses pursuant to Practice Book § 367,[7] which the trial court subsequently allowed to be stricken.

The two actions against Coric were consolidated, and Higgins' action against Herbert Karp was

the date of filing of the complaint, the interest shall be computed from the date the 'offer of judgment' was filed. The court may award reasonable attorney's fees in an amount not to exceed three hundred fifty dollars, and shall render judgment accordingly. This section shall not be interpreted to abrogate the contractual rights of any party concerning the recovery of attorney's fees in accordance with the provisions of any written contract between the parties to the action."

[5] Higgins also made offers of judgment to Gary Bertman and to E.G. & H., Inc., which were rejected. See footnote 1.

[6] Practice Book § 376 provides in relevant part: "A motion to set aside a default where no judgment has been rendered may be granted by the court for good cause shown upon such terms as it may impose. As part of its order the court may extend the time for filing pleadings or disclosure in favor of a party who has not been negligent. . . ."

[7] Practice Book § 367 provides in relevant part: "In any hearing in damages upon default, the defendant shall not be permitted to offer evidence to contradict any allegations in the plaintiff's complaint, except such as relate to the amount of damages, unless notice has been given to the plaintiff of the intention to contradict such allegations and of the subject matter which the defendant intends to contradict, nor shall the defendant be permitted to deny the right of the plaintiff to maintain such action, nor shall the defendant be permitted to prove any matter of defense, unless written notice has been given to the plaintiff of the intention to deny such right or to prove such matter of defense. . . ."

severed.[8] Between August 23 and August 30, 1995, the two actions brought by Higgins and Karp as representatives of the respective estates were tried, as a hearing in damages, to the jury, which returned verdicts against Coric in favor of Higgins and Karp. The jury awarded damages of $3,936,933 to Higgins and $1,405,895 to Karp. The trial court did not permit Higgins' individual action against Coric for loss of filial consortium to go to the jury. On October 6, 1995, the trial court denied Coric's motions for remittitur and to set aside the verdicts and rendered judgments against Coric on the verdicts in favor of Higgins in her representative capacity and in favor of Karp, and in favor of Coric against Higgins individually. Over Coric's objections, the trial court, pursuant to § 52-192a, added 12 percent prejudgment interest to Higgins' damage award from the date of the filing of the complaint on February 19, 1994, to the date of the denial of the motion to set aside the verdict on October 6, 1995. Coric appealed from the judgments of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).[9]

On appeal, Coric contends that the trial court abused its discretion when it: (1) denied his motions to set aside the defaults entered against him for failure to plead; (2) sustained Higgins' objections to his notices of defenses, which notices were filed more than ten days after he had received notice of the entry of judgments of default; (3) denied his request to apply New York law rather than Connecticut law to the case; and (4) awarded Higgins prejudgment interest under § 52-192a. We agree with Coric's first claim, and because it

[8] On May 13, 1996, Higgins, individually and as administratrix, withdrew all claims against Herbert Karp.

[9] Higgins originally filed an appeal from the judgment denying her recovery for loss of filial consortium, which she subsequently withdrew.

is dispositive of the appeal, we reverse the judgments of the trial court and remand the cases for further proceedings.

Coric argues that the trial court improperly denied his motions to set aside the defaults entered against him for failure to plead. "Pursuant to Practice Book § 376 [a] motion to set aside a default when no judgment has been rendered may be granted by the court for good cause shown upon such terms as it may impose. The determination of whether to set aside [a] default is within the discretion of the trial court. See *White's Appeal*, 75 Conn. 314, 318, 53 A. 582 (1902). *Skyler Limited Partnership* v. *S.P. Douthett & Co.*, 18 Conn. App. 245, 248–49, 557 A.2d 927, cert. denied, 212 Conn. 802, 560 A.2d 984 (1989)." (Internal quotation marks omitted.) *Voluntown* v. *Rytman*, 21 Conn. App. 275, 283, 573 A.2d 336, cert. denied, 215 Conn. 818, 576 A.2d 548 (1990). The scope of review by this court on a claim that the trial court abused its discretion is well settled. "[E]very reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Citation omitted; internal quotation marks omitted.) *Suffield Bank* v. *Berman*, 228 Conn. 766, 783, 639 A.2d 1033 (1994).

With these principles in mind, we turn to the facts and circumstances relevant to Coric's first claim. On April 21, 1995, attorney Paul Lange entered an appearance on behalf of Coric in lieu of Thomas Wilson, the attorney who had represented Coric up to that point. Lange subsequently filed motions to set aside the defaults that had been entered against Coric. In support of the motions, Lange submitted a memorandum of law and Wilson's affidavit setting forth the reasons why he had not answered the complaints brought against Coric in a timely fashion. In the affidavit, Wilson stated that

the death of Robert Freeman and the insolvency of Freeman's estate had hindered his ability to conduct an investigation of the crash and thereby prevented him from formulating adequate defenses. Wilson further stated that he was hampered by the fact that he had not received the National Transportation Safety Board report until late 1994, and that he believed that AIG Aviation, the insurer of E.G. & H., Inc., should and would provide representation and liability coverage for Coric, which it had failed to do.

On June 5, 1995, a hearing was held before the trial court on Coric's motions to set aside the defaults. The trial court denied the request to set aside the defaults and issued a memorandum explaining the reasons for its decision. In the memorandum, the trial court repeatedly made reference to the conduct of AIG Aviation, stating: "[T]he insurer ordered Wilson not to defend the case, in effect forbidding him to file a pleading. . . . It is clear to the court . . . that AIG [Aviation] denied coverage to the defendant, Freeman, and declined to defend the case. . . . Since AIG [Aviation], the insurer, ordered Wilson not to defend the case, his failure to do so is hardly a justification for the defendant's failure to plead." Finding that a "conscious and calculated decision was made by AIG [Aviation] not to defend these cases," the trial court determined that the "reversal of the company's decision to defend [was not an] adequate reason to [set aside the defaults]." On the basis of these findings of improper conduct on the part of AIG Aviation, the trial court, in resolving the motions to set aside the defaults, concluded that Coric "not only failed to state good cause for its failure to answer, but also failed to give any reason at all, alone suffic[ient] to mandate [the] denial of the motion[s] to [set aside] the default[s]."

Our careful review of the trial court's decision regarding the refusal to set aside the defaults reveals that the

trial court did not consider the reasons that Wilson had set forth in his affidavit on behalf of Coric for failing to plead, but instead focused exclusively on the conduct of AIG Aviation, a nonparty to the litigation. In thus viewing Wilson as a representative of the insurer, AIG Aviation, rather than as a representative of the defendant, Coric, the trial court ignored the principle, well settled in our jurisprudence, that "[a]n attorney's allegiance is to his client, not to the person who happens to be paying for his services." *Martyn* v. *Donlin*, 151 Conn. 402, 414, 198 A.2d 700 (1964). This rule applies with equal force in the context of the relationship between an attorney, an insured, and the insurer. Thus, even when an attorney is compensated or expects to be compensated by a liability insurer, his or her duty of loyalty and representation nonetheless remains exclusively with the insured. *Novella* v. *Hartford Accident & Indemnity Co.*, 163 Conn. 552, 571–72, 316 A.2d 394 (1972). In denying the motions to set aside the defaults entered against Coric, the trial court arrived at its decision based on the perceived improper actions of AIG Aviation in initially denying coverage, then later deciding to defend. In so doing, the trial court improperly imputed the actions of AIG Aviation to Coric.

This does not mean that the conduct of the defendant's attorney may not be attributed to his client for this purpose. Indeed, ordinarily the attorney's conduct in representing his client *is* attributed to his client for such purposes. Nor does this mean that an insurer's conduct may never be considered in the context of a motion to set aside a default. There may be instances where the conduct of the insurer is so intertwined with or directly related to the conduct of the insured or attorney that attribution may be appropriate. This, however, is not such a case.

Because the trial court disregarded the fact that Wilson, as Coric's attorney, did not represent AIG Aviation,

the trial court relied on factors irrelevant to the determination of whether good cause existed to set aside the defaults entered against Coric. The trial court did not, as it should have, evaluate the merits of the motions according to the reasons that Wilson put forth on Coric's behalf, namely, the obstacles raised by Robert Freeman's death and the insolvency of Freeman's estate. Although we are mindful of the deferential standard by which we review a discretionary ruling denying a motion to set aside a default, we nevertheless conclude that the trial court exceeded the scope of its discretion by focusing on factors irrelevant to whether there was good cause to set aside the defaults.

The judgments are reversed, the orders denying the motions to set aside the defaults are vacated and the cases are remanded to the trial court to determine, on the basis of factors other than the conduct of AIG Aviation, whether good cause exists to set aside the defaults entered against Coric. We retain jurisdiction of the cases for the purposes of appellate review of the other issues on appeal in the event that the trial court, in considering factors consistent with this opinion, does not find good cause to set aside the defaults.

In this opinion the other justices concurred.