THERESA HIGGINS, ADMINISTRATRIX (ESTATE OF STEPHANIE FREEMAN), ET AL. *v.* HERBERT KARP, EXECUTOR (ESTATE OF ETHEL KARP), ET AL.
(SC 15435)

HERBERT KARP, EXECUTOR (ESTATE OF ETHEL KARP) *v.* DRZISLAV CORIC, ADMINISTRATOR (ESTATE OF ROBERT FREEMAN)
(SC 15441)

Callahan, C. J., and Borden, Berdon, Norcott, Katz, Palmer and McDonald, Js.

Argued November 4, 1997—officially released January 20, 1998

*Wesley W. Horton,* with whom were *Susan M. Cormier* and *Paul A. Lange,* for the appellant (defendant Drzislav Coric, as administrator of the estate of Robert Freeman).

*David T. Ryan,* with whom were *Stephen F. Traub, Eric P. Smith* and, on the brief, *Daniel F. Sullivan* and *Bradford S. Babbitt,* for the appellees (plaintiffs).

*Opinion*

NORCOTT, J. The dispositive issue in this appeal is whether the trial court, in the hearing required by our remand in *Higgins* v. *Karp,* 239 Conn. 802, 811, 687 A.2d 539 (1997), properly excluded additional evidence on the issue of whether good cause existed to set aside defaults against Drzislav Coric, the administrator of the estate of Robert Freeman (hereafter referred to as the

defendant), for failure to plead. The trial court concluded that: (1) our decision in *Higgins* mandated that the trial court, on remand, was limited to the record as it existed at the time of the first hearing on the defendant's motions to set aside the defaults; and (2) based on its review of that record, the defendant failed to demonstrate that good cause existed to set aside the defaults. On appeal,[1] the defendant claims that the trial court misinterpreted our remand in *Higgins* to prohibit the introduction of additional evidence, and that its failure to exercise its discretion pursuant to Practice Book § 376[2] was improper. The defendant further claims that the evidence was relevant and that its exclusion was harmful. We agree with the defendant and reverse the judgment of the trial court.

This is the second time that we have considered this case. The underlying facts are set out fully in our previous opinion; see *Higgins* v. *Karp*, supra, 239 Conn. 804–807; but we briefly summarize the facts relevant to the issues raised in this appeal. This litigation arises out of the April 12, 1993 crash of a Piper aircraft en route from Groton, Connecticut, to Cortland, New York, in which the pilot, Robert Freeman, his daughter, Stephanie Freeman, and Ethel Karp were killed. On February

[1] In *Higgins* v. *Karp*, supra, 239 Conn. 807, the defendant's first appeal to this court, he claimed that the trial court had abused its discretion when it: (1) denied his motions to set aside the defaults; (2) sustained the plaintiff Theresa Higgins' objections to his notices of defenses, which notices were filed more than ten days after he had received notice of the entry of judgment· of default; (3) denied his request to apply New York law rather than Connecticut law to the case; and (4) awarded Higgins prejudgment interest under General Statutes § 52-192a. Because we agreed with his first claim, which was dispositive of the appeal, we did not reach the remaining issues. We retained jurisdiction, however, for the purposes of appellate review of the other issues on appeal. Id., 811.

[2] Practice Book § 376 provides in relevant part: "A motion to set aside a default where no judgment has been rendered may be granted by the court for good cause shown upon such terms as it may impose. As part of its order the court may extend the time for filing pleadings or disclosure in favor of a party who has not been negligent. . . ."

19, 1994, the plaintiff Theresa Higgins, the mother of Stephanie Freeman, brought an action individually[3] and as administratrix of her daughter's estate against, inter alia, the defendant[4] alleging negligence in the death of her daughter. On May 17, 1994, the plaintiff Herbert Karp, the husband of Ethel Karp, also brought an action against the defendant.[5]

In their respective actions against the defendant, the plaintiffs moved for defaults for failure to plead. Karp was granted a default against the defendant on July 25, 1994, and Higgins was granted a default on August 26, 1994. The plaintiffs filed individual claims for a hearing in damages on March 13 and 15, 1995. In April, 1995, attorney Paul Lange filed an appearance on behalf of the estate of Robert Freeman, in lieu of attorney Thomas Wilson.

"On May 19, 1995, [the defendant] moved, pursuant to Practice Book § 376, to set aside the two defaults entered against him. The trial court denied [the defendant's] motions and, on June 9, 1996, the court issued a memorandum of decision addressing the reasons for the denial." *Higgins* v. *Karp*, supra, 239 Conn. 806. The defendant appealed from the judgment of the trial court.[6] Id., 807.

---

[3] The trial court struck Higgins' individual action for loss of filial consortium against the defendant. *Higgins* v. *Karp*, supra, 239 Conn. 807.

[4] "[Higgins'] initial complaint also named as defendants E.G. & H., Inc., the owner of the aircraft, and Gary M. Bertman, one of the directors and stockholders of E.G. & H., Inc. The claims against these two defendants, however, were subsequently withdrawn on March 15, 1995." *Higgins* v. *Karp*, supra, 239 Conn. 804 n.1. Higgins also filed claims against Karp, which she subsequently withdrew on May 13, 1996. Id., 807 n.8. Accordingly, Coric is the only defendant remaining.

[5] These cases were subsequently consolidated by the trial court. Hereafter, we refer to Higgins and Karp collectively as the plaintiffs.

[6] The defendant appealed to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

In *Higgins*, we concluded that, because the trial court had considered the actions of the insurer of the aircraft, a nonparty, it "exceeded the scope of its discretion by focusing on factors irrelevant to whether there was good cause to set aside the defaults." Id., 811. Accordingly, we reversed the judgment of the trial court, vacated the orders denying the motions to set aside the defaults, and remanded the cases to the trial court "to determine, on the basis of factors *other than* the conduct of [the insurer of the aircraft], whether good cause exists to set aside the defaults entered against [the defendant]." (Emphasis added.) Id.

Pursuant to our remand, the trial court[7] held a hearing to reconsider the defendant's motions to set aside the defaults. At that hearing, the trial court considered only the record that had been before the original trial court. That record included: (1) a memorandum of law filed by Lange, the defense counsel; (2) an affidavit by Wilson, the former defense counsel, which set forth the reasons why he had not answered the complaints brought against the defendant in a timely fashion; and (3) a memorandum of law, in opposition, filed by the plaintiffs' counsel. Wilson stated in the affidavit that the failure to plead had been the result of difficulty defending the case because of: (1) the death of Robert Freeman; (2) the insolvency of Freeman's estate, which had hindered Wilson's ability to conduct an investigation of the crash and thereby prevented him from formulating adequate defenses; (3) the complexity of the cases; (4) the refusal by the insurer of the aircraft to appear and defend; and (5) his inability to obtain the National Transportation Safety Board report until late 1994.

---

[7] In accordance with General Statutes § 51-183c, we ordered that the matter be assigned to a judge other than the judge who originally had decided the motions.

The defendant sought to offer into evidence the following three discovery documents that had existed at the time of the initial hearing, but that had not been included in the original record: (1) Higgins' request for production dated May 13, 1994; (2) Higgins' interrogatories dated May 13, 1994; and (3) the defendant's responses to Higgins' interrogatories dated August 31, 1994. The defendant argued that these documents were relevant to the determination of whether good cause had existed because they demonstrated his due diligence. The defendant also sought to introduce an excerpt from the transcript of the oral argument that took place before this court in the first appeal in which attorney David Ryan, the counsel for Karp, stated that the defendant's delay in pleading had not caused his client any prejudice.[8] The defendant argued that this excerpt should be admitted because prejudice was a relevant factor for the trial court to consider.

The trial court sustained the plaintiffs' objection to the introduction of all four documents on the basis that

---

[8] The defendant argues that Ryan, when making this statement, was speaking on behalf of both plaintiffs. The specific portion of the oral argument before this court that the defendant sought to have admitted as evidence provided in part:

"Mr. Smith [Counsel for Higgins]: . . . Mr. Ryan, since the issues are collective to both of our cases, can address the balance of our brief and answer the court's questions. . . .

\* \* \*

"The Court: The lapse, the time delay in filing the motion to open the defaults. How were you prejudiced?

"Mr. Ryan [Counsel for Karp]: We weren't prejudiced during that period of time; we were getting our case prepared. We didn't know if the next morning's mail might bring in an answer.

"Experts were waiting in the wings on liability to be able to, who would have been called to court to testify and have opinions as to the cause of this aircraft crashing. That wasn't needed in the end because the case went to trial under a default.

"The Court: So, the delay caused you no prejudice in the case. Is that correct?

"Mr. Ryan: Well, in preparing it? That's correct but that's not the standard that you have to decide it on."

"the Supreme Court has mandated this trial court to look at what was before the trial court on that date, and only what was before the trial court on that date to make a determination as to whether or not the motion to reopen should have, in fact, been granted as opposed to denied." Thereafter, the trial court denied the defendant's motions to set aside the defaults. This appeal followed.

The defendant argues that the trial court improperly excluded the proffered evidence because our decision in *Higgins* did not limit the trial court, on remand, to the evidence that was before the original court, and the proffered evidence was relevant to the determination of whether to set aside the defaults. The defendant further claims that the exclusion of the evidence was harmful. We agree.

We first address whether the trial court properly construed our remand. The plaintiffs argue that the trial court correctly interpreted our decision in *Higgins* to require that, on remand, its determination of whether good cause existed to set aside the defaults was to be based solely on what was before the original trial court. We disagree with the plaintiffs' interpretation of our remand.

"Well established principles govern further proceedings after a remand by this court. In carrying out a mandate of this court, the trial court is limited to the specific direction of the mandate as interpreted *in light of the opinion.* . . . This is the guiding principle that the trial court must observe. . . . It is the duty of the trial court on remand to comply strictly with the mandate of the appellate court according to its true intent and meaning. . . . The trial court should examine the mandate and *the opinion of the reviewing court and proceed in conformity with the views expressed therein.* . . . *Halpern* v. *Board of Education,* 231

Conn. 308, 311, 649 A.2d 534 (1994)." (Emphasis in original; internal quotation marks omitted.) *Rizzo Pool Co.* v. *Del Grosso,* 240 Conn. 58, 65, 689 A.2d 1097 (1997). "We have rejected efforts to construe our remand orders so narrowly as to prohibit a trial court from considering matters relevant to the issues upon which further proceedings are ordered that may not have been envisioned at the time of the remand. *Blaker* v. *Planning & Zoning Commission,* 219 Conn. 139, 592 A.2d 155 (1991). So long as these matters are not extraneous to the issues and purposes of the remand, they may be brought into the remand hearing. *Cioffoletti* v. *Planning & Zoning Commission,* 220 Conn. 362, 369, 599 A.2d 9 (1991)." (Internal quotation marks omitted.) *Halpern* v. *Board of Education,* supra, 313.

Applying these principles to the present case, we cannot agree with the plaintiffs that our decision in *Higgins* limited the trial court, on remand, to the record as it existed at the time of the original hearing. We instructed the trial court to determine whether good cause exists, without considering irrelevant factors such as the conduct of nonparties. The plaintiffs claim that our statement that the trial court "should have, evaluate[d] the merits of the motions according to the reasons that [defense counsel] put forth on [the defendant's] behalf, namely, the obstacles raised by Robert Freeman's death and the insolvency of Freeman's estate"; *Higgins* v. *Karp,* supra, 239 Conn. 811; supports their argument that the trial court was supposed to consider *only* that evidence. Our reference to the evidence that was before the initial court was not intended to circumscribe the evidence that could be considered by the trial court on remand. Indeed, it would be incongruous for us to say, on the one hand, that the trial court cannot consider the conduct of the insurer of the aircraft because it is an irrelevant factor and, on the

other hand, that the trial court is precluded from admitting additional, relevant evidence.

Moreover, it is well established that " '[t]he determination of whether to set aside [a] default is within the discretion of the trial court.' " Id., 808. Our remand was not intended to curtail the exercise of that discretion. "While it is normally true that this court will refrain from interfering with a trial court's exercise of discretion . . . this presupposes that the trial court did in fact *exercise* its discretion. [D]iscretion imports something more than leeway in decision-making. . . . It means a legal discretion, to be *exercised* in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." (Emphasis in original; internal quotation marks omitted.) *State* v. *Colton*, 234 Conn. 683, 703, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996).

It is apparent from this record that the trial court failed to exercise its discretion. "Where, as here, the trial court is properly called upon to exercise its discretion, its failure to do so is error." *State* v. *Martin*, 201 Conn. 74, 88, 513 A.2d 116 (1986); see also *State* v. *Lee*, 229 Conn. 60, 73–74, 640 A.2d 553 (1994) ("[i]n the discretionary realm, it is improper for the trial court to fail to exercise its discretion").

The defendant next contends that the exclusion of the evidence was improper because it was relevant to the determination of whether to set aside the defaults. We agree.

It is axiomatic that " '[e]vidence is admissible only if it is relevant.' " *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 569, 657 A.2d 212 (1995). "Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events

the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . All that is required is that the evidence *tend* to support a relevant fact even to a slight degree . . . ." (Emphasis in original; internal quotation marks omitted.) *Potter* v. *Chicago Pneumatic Tool Co.*, 241 Conn. 199, 259–60, 694 A.2d 1319 (1997). " 'Evidence is admitted, not because it is shown to be competent, but because it is not shown to be incompetent. No precise and universal test of relevancy is furnished by the law, and the question must be determined in each case according to the teachings of reason and judicial experience. . . .' " (Citations omitted.) *Williams Ford, Inc.* v. *Hartford Courant Co.*, supra, 569.

With these principles in mind, we review the evidence that the defendant sought to have admitted. The defendant argues that the three excluded discovery documents would be relevant to the trial court's determination of whether good cause existed because these documents would show that "Wilson exercised some diligence in that he answered the . . . interrogatories in *Higgins* shortly after the pleading defaults were entered . . . [and] clearly was not ignoring the files." The defendant argues that the relevance of the three discovery documents is related to earlier correspondence from Wilson, which the plaintiffs had offered at the original hearing. In a letter addressed to both plaintiffs dated August 4, 1994, Wilson stated that the estate of Robert Freeman was insolvent and that, in his opinion, the insurer of the aircraft had wrongfully denied coverage for Freeman. Wilson further advised the plaintiffs that he had informed the insurer that he had not filed an answer because he did not want to prejudice any of the insurer's rights with respect to any answer or defenses it might wish to file. He enclosed a copy of the insurer's response denying coverage. Because the insurer had denied his request to appear

and defend, Wilson inquired whether either or both of the plaintiffs wished to implead the insurer.

We are unpersuaded by the plaintiffs' argument that the documents are irrelevant to the determination of whether to set aside the defaults. The three discovery documents directly pertain to the defendant's diligence and explanation for the failure to plead. We therefore agree with the defendant that the trial court improperly excluded the documents.

Our analysis does not end here, however, because we next must determine whether the exclusion of the proffered evidence was harmful. In the absence of a showing that the evidence would have affected the final result, its exclusion is harmless. "It is a fundamental rule of appellate review of evidentiary rulings that if error is not of constitutional dimensions, an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him. . . . Accordingly, we must determine whether [an] improper evidentiary ruling is likely to have affected the result of the trial. *State* v. *Brown*, 199 Conn. 14, 25, 505 A.2d 690 (1986). *Gateway Co.* v. *DiNoia*, [232 Conn. 223, 239, 654 A.2d 342 (1995)]." (Citation omitted; internal quotation marks omitted.) *Sadloski* v. *Manchester*, 235 Conn. 637, 645, 668 A.2d 1314 (1995).

The plaintiffs contend that even if the evidence was relevant, its exclusion was not harmful because the trial court found the defendant's reasons for failing to plead " 'uncompelling.' " The plaintiffs claim that, in view of this assessment and the marginal relevancy of the evidence, the admission of the proffered evidence was not likely to have affected the result of the hearing.

The defendant counters that the exclusion of the discovery documents was harmful because "[i]f the trial court had known that the defendant had responded to the interrogatories on August 31, 1994, perhaps it would

have understood why the correspondence was significant and why Wilson answered the discovery request without . . . answering the complaints. The fact that [the] discovery answers were made might therefore have convinced the trial court to give more weight to the reasons given in Wilson's affidavit for not pleading."

The proffered evidence is particularly relevant in light of the trial court's emphasis on the length of the delay. The trial court stated "that failing to do anything for ten months after the defaults were entered and two months after the actions were claimed to the hearing in damages list [was] egregious . . . ." When read cumulatively, the discovery documents and Wilson's correspondence arguably lend credence to the defendant's claim that the failure to plead was neither a delaying tactic nor deliberate dilatory conduct. Wilson was in communication with the plaintiffs about the status of the estate, the refusal of the insurer to defend, and the reason for not answering the complaints. Furthermore, Wilson answered Higgins' interrogatories in a responsive, arguably substantive, manner.

This evidence, which directly bore on the question of whether the defendant had been dilatory, coupled with the trial court's statement that "[the] reasons offered by the defendant pose a hard case," persuades us that the exclusion of this additional evidence may well have affected the trial court's conclusion that good cause did not exist to set aside the defaults.[9] Accordingly, we conclude that the exclusion of the three discovery documents was harmful.

Notwithstanding, the plaintiffs insist that the discovery requests and the defendant's response related only

[9] Notwithstanding our conclusion, we express no opinion with respect to the trial court's subsequent decision on remand regarding the defendant's motions to set aside the defaults.

to Higgins' case and cannot affect the default granted against the defendant in the companion case of *Karp* v. *Coric*, 239 Conn. 802, 687 A.2d 539 (1997). We are unpersuaded. The defendant faced the same circumstances in both cases. The discovery documents, when combined with Wilson's letter, are relevant to the defendant's failure to plead in both cases.

The defendant next argues that the transcript of oral argument before this court in *Higgins*[10] was relevant because the trial court may consider prejudice in determining whether to set aside defaults. We agree.

As we noted previously, " '[the] determination of whether to set aside [a] default is within the discretion of the trial court' "; *Higgins* v. *Karp*, supra, 239 Conn. 808; and will not be disturbed unless that discretion has been abused or where injustice will result. In the exercise of its discretion, the trial court may consider not only the presence of "mistake, accident, inadvertence, misfortune or other reasonable cause"; *Munch* v. *Willametz*, 156 Conn. 6, 10, 238 A.2d 424 (1968); factors such as "[t]he seriousness of the default, its duration, the reasons for it and the degree of contumacy involved"; E. Stephenson, Connecticut Civil Procedure (3d Ed. 1997) § 96 (f), p. 288; but also, the totality of the circumstances, including whether the delay has caused prejudice to the nondefaulting party.

Our conclusion that the exercise of discretion by the trial court pursuant to Practice Book § 376 does not preclude the consideration of prejudice to the nondefaulting party is consistent with the similar construction of rule 55 (c) of the Federal Rules of Civil Procedure by the federal courts. Rule 55 (c) provides: "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may

---

[10] See footnote 8 of this opinion.

likewise set it aside in accordance with Rule 60 (b)."
Because rule 55 (c), like Practice Book § 376, does
not define the term "good cause," federal courts have
established criteria to assess whether a party should
be relieved from a default. A "widely accepted factor" in
this determination is "whether setting aside the default
would prejudice the adversary . . . ." *Enron Oil Corp.*
v. *Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); see, e.g.,
*Action S.A.* v. *Marc Rich & Co.*, 951 F.2d 504, 507 (2d
Cir. 1991), cert. denied, 503 U.S. 1006, 112 S. Ct. 1763,
118 L. Ed. 2d 425 (1992); *In re Men's Sportswear, Inc.*,
834 F.2d 1134, 1138 (2d Cir. 1987); *Meehan* v. *Snow*,
652 F.2d 274, 277 (2d Cir. 1981). We conclude, therefore,
that the statement in oral argument before this court
regarding prejudice as a result of the defendant's delay
in failing to plead is relevant evidence to the trial court's
determination of whether to set aside the defaults.

We further conclude, on the basis of our review of
the record, that the defendant has sustained his burden
of showing that the exclusion of the transcript was
harmful. The trial court conceded that the case was
difficult, that "the plaintiffs were not particularly dili-
gent in moving the case forward," and that the decisive
factor was the delay. The court stated that even though
"this court finds the reasons proffered by the defendant
uncompelling . . . [t]his court would be inclined to
open the defaults against the defendant were it not for
the length of time that the defendant failed to attend
to the defaults." We cannot agree with the plaintiffs
that the impact of the delay and whether it resulted in
prejudice to the nondefaulting party might not have
affected the final result.

Because the trial court in the present case did not
exercise its discretion and did not consider additional
relevant evidence in its determination of whether good
cause exists to set aside the defaults, it must do so
on remand.

The judgment is reversed and the case is remanded to the trial court to consider the defendant's motions to set aside the defaults entered against him.

In this opinion the other justices concurred.