[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 13674
On January 16, 1993, Richard Austin brutally murdered his former wife, the plaintiff's decedent Gloria Foreman.[1] In December 1994, the plaintiff commenced an action to obtain discovery, claiming that certain unnamed New Haven police officers had failed to appropriately respond to reports by the plaintiff's decedent prior to her death that Richard Austin was threatening her. After a hearing at which the City appeared and was represented by then-Deputy Corporation Counsel Martin Echter, the court ordered the City to provide the plaintiff with documents pertaining to reports and calls to the residence of Gloria Foreman, case-incident reports and dispatch cards pertaining to Richard Austin, spanning several years. The defendants here represent that approximately forty-five documents, as well as tape recordings of police transmissions on January 16, 1993, were included.
On January 19, 1995, the plaintiff commenced this action in seven counts against the City of New Haven and five of its police officers. The plaintiff claims that the defendants breached a duty to protect the plaintiff's decedent from Richard Austin. The action bore a return date of February 7, 1995. When the defendants failed to timely appear, the plaintiff filed a motion for default for failure to appear on June 23, 1995. A copy of the motion was sent to Attorney Echter together with a letter of enclosure.[2] The day before the motion was filed, however, the Attorney Echter, on behalf of the Office of the Corporation Counsel of the City of New Haven, filed an appearance for all defendants. No other pleading accompanied the defendants' appearance.
On November 9, 1995, the plaintiff filed a motion for default for failure to plead against the defendants. Pursuant to Practice Book § 363A (now § 17-32),[3] the motion was granted by an assistant clerk of the court that same day. On November 14, 1995, the court gave the parties notice that the motion for default had been granted. On November 20, 1995, the plaintiff filed a jury claim and a claim to the trial list for a hearing in damages.
The court's file reflects that there was no further activity until 1998, when the defendants filed discovery requests, evidently unaware that a default had entered against them over two years earlier. After the parties were at issue over whether CT Page 13675 the plaintiff had complied with the defendant's discovery requests, and after the plaintiff had selected a hearing date for her hearing in damages, the defendants recognized that they were in default. On October 19, 1998, nearly three years after they had been defaulted for failure to plead, the defendants moved to set aside the default. Both parties subsequently filed affidavits, supporting documents, and memoranda of law.
Practice Book § 17-32 (formerly § 363A) provides in relevant part: "If a party who has been defaulted under this section files an answer before a judgment after default has been rendered by the court, the clerk shall set aside the default. Ifa claim for a hearing in damages or a motion for judgment hasbeen filed the default may be set aside only by the court. A claim for a hearing in damages or motion for judgment shall not be filed before the expiration of fifteen days from the date of notice of issuance of the default under this paragraph." (Emphasis added.) Since a claim for a hearing in damages had been filed when the defendants moved to set aside the default, it is the second sentence of this portion of § 17-32 that controls.
Although Practice Book § 17-32 does not expressly provide, the defendants conceded that the standard to be used by the court in determining whether to grant their motion is the "good cause" standard of Practice Book § 17-42.[4] SeeHiggins v. Karp, 243 Conn. 495 (1998); Higgins v.Karp, 239 Conn. 802, 687 A.2d 539 (1997).
"The determination of whether to set aside [a] default is within the discretion of the trial court." Higgins v. Karp,supra, 239 Conn. 808. "In the exercise of its discretion, the trial court may consider not only the presence of `mistake, accident, inadvertence, misfortune or other reasonable cause[,]' . . . factors such as `[t]he seriousness of the default, its duration, the reasons for it and the degree of contumacy involved'; E. Stephenson, Connecticut Civil Procedure (3d Ed. 1997) § 96(f), p. 288; but also, the totality of the circumstances, including whether the delay has caused prejudice to the nondefaulting party." Higgins v. Karp, supra,243 Conn. 508. In Higgins v. Karp, supra, 243 Conn. 508-509, the Supreme Court, while not expressly engrafting Rule 55(c) of the Federal Rules of Civil Procedure onto Practice Book § 17-42, suggested that criteria developed under Rule 55(c) was relevant in determining whether a motion to set aside a default under § 17-42 should be granted. "A `widely accepted factor' in CT Page 13676 this determination is `whether setting aside the default would prejudice the adversary . . .' Enron Oil Corp. v. Diakuhara,10 F.3d 90, 96 (2d Cir. 1993) . . ." Id., 509. "[H]ow these factors will be evaluated and weighed on a motion [to open a default] . . . lies within the discretion of the trial court to a considerable degree, and, not surprisingly, the . . . courts are willing to grant relief from a default entry more readily and with a lesser showing than they are in the case of a default judgment. The greater lenience toward granting relief from default entries than default judgments is evidenced by the fact that some courts only require proof of some of the elements that must be shown on a [motion to open a default] . . . or are less demanding concerning the manner and extent of the movant's showing." 10 Wright, Miller Kane, Federal Practice and Procedure, § 2692, pp. 471-72.[5] With these teachings in mind the court turns to the defendants' motion.
First, the seriousness of the default. Neither case law nor Professor Stephenson's treatise, cited by the Supreme Court inHiggins v. Karp, supra, 243 Conn. 508, suggest how to measure "the seriousness of the default." The most that can be said is that the default suffered was not as serious as a failure to comply with an explicit order of the court. A failure to plead interrupts the orderly progress of the case and, here, disturbed the plaintiff's reasonable expectation as to the extent to which it was required to prepare its case on liability. "`[T]he entry of a default operates as a confession by the defaulted defendant of the truth of the material facts alleged in the complaint which are essential to a judgment. Thus, the defaulted defendant is precluded from making any further defense to the action.'Costello v. Hartford Institute of Accounting, Inc.,193 Conn. 160, 161 n. 1, 475 A.2d 310 (1984)." Aetna Casualty Surety Co.v. Jones, 220 Conn. 285, 295 n. 12, 596 A.2d 414 (1991).
Second, the reasons for the default and the degree of contumacy involved. Until this year, Attorney Martin S. Echter was the attorney in the Office of the Corporation Counsel of the City of New Haven with principal responsibility for the defense of lawsuits alleging police misconduct, in addition to other major federal and State litigation and tax appeals. Attorney Echter does not deny that he did not timely answer the plaintiff's complaint or that the Corporation Counsel's office received notice of the default. In December, 1994, shortly before the commencement of this action, an assistant corporation counsel who had provided some assistance to Attorney Echter resigned. CT Page 13677 That attorney was eventually replaced by another assistant corporation counsel "with no experience in civil litigation." Attorney Echter continued to handle "the clear majority of cases alleging police misconduct, most of which were filed in federal court," in addition to other assignments.
Owing to the extraordinary backlog of civil and criminal cases pending in the federal courts at the end of the 1980s; see S. Rep. (Judiciary Committee) No. 101-416, 101st Cong., 2d Sess. (1990), reprinted in 1990 U.S. Code Congressional and Administrative News 6804, 6808-6811, 6835; Congress, at the end of 1990, authorized 77 additional federal district and circuit judgeships throughout the country, including four additional judgeships in the District of Connecticut. See 28 U.S.C. § 133, as amended December 1, 1990 by Public Law 101-650, Title II (the Federal Judgeship Act of 1990). This doubled the number of United States District judges in the District of Connecticut. In late 1994 and the first half of 1995, these judgeships and one outstanding vacancy were filled with the appointment of new United States district Court judges. During this time and continuing for some time thereafter, these judges, together with visiting federal judges from other districts, embarked on a "blitz" to reduce the backlog in civil rights cases. According to his affidavit, Attorney Echter "personally tried federal cases almost back-to-back between January 1995 through May 1996, in addition to a number of State Court cases and other assignments." Also, during this time period, Attorney Echter was "the only attorney responsible for nearly 600 tax appeals pending in the Corporation Counsel's Office."
An obvious picture arises from this account. The default in this case was caused by, and was not sought to be set aside earlier, because of neglect. Attorney Echter could not reasonably be expected to shoulder the burden that was cast upon him by the Office of the Corporation Counsel. It was the responsibility of the City of New Haven to ensure that it had enough lawyers in or out of its Corporation Counsel's office to defend the City and its officers and employees. Courts cannot tailor their rules to accommodate municipal corporations from such neglect of duty nor should other parties in litigation with the City be called upon to shoulder the prejudice visited upon them from such neglect.
Having said this, it also is true that the judiciary has not been immune to problems of chronic understaffing. See, e.g.,Pamela B. v. Ment, 244 Conn. 296, (1998); PellegrinoCT Page 13678v. O'Neill, 193 Conn. 670, 692, 480 A.2d 476, cert. denied,469 U.S. 875, 105 S.Ct. 236, 83 L.Ed.2d 176 (1984). So too, no branch of government may ignore its own fiscal realities or those of another branch of government. Nor should courts ignore the fiscal realities of city government. Cities have limited taxing power based primarily on property taxes for which the base is limited and, in some cases in recent decades, unstable.Stafford Higgins Industries, Inc. v. Norwalk, Superior Court, judicial district of Fairfield, No. 317449 (March 10, 1997) (18 CONN. L. RPTR. 605), affirmed in part, reversed on other grounds,245 Conn. 551 (1998). Also, unlike private law firms, city attorneys have little control over their caseloads. While cities may hire additional attorneys to handle these cases, only a relatively few lawyers truly have sufficient competency to handle cases involving alleged police misconduct. Finally, government, unlike private law firms, cannot authorize the hiring of additional lawyers, appropriate the moneys therefor and employ attorneys with same dispatch as private law firms. It is in the context of these realities that the defendants' default should be viewed.
These observations, however valid, would be of little moment were the default suffered by the city in this case part of a chronic pattern ensuing over a protracted period of time. That does not appear to be the case, based on the officially and unofficially published case law, the experience of resident judges presently assigned to this judicial district, and my own experience. In short, the default was the result of inattention or inadvertent neglect, not of mistake, accident, misfortune or of willful neglect.
As serious as this is, it does not, in and of itself, preclude the court from granting the defendant's motion. "[I]t is not necessary that conduct be excusable to qualify for relief under the `good cause' standard . . ." Shepard Claims Service v.William Darrah Associates, 796 F.2d 190, 194 (6th Cir. 1986). "When the issue is one of whether to set aside an entry of default so that the `good cause' standard . . . is applicable, it is not absolutely necessary that the neglect or oversight offered as reason for the delay in filing a responsive pleading be excusable." Id., quoting Broglie v. Mackay-Smith, 75 F.R.D. 739,742 (W.D.Va. 1977). "It is the policy of the law to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court." Snow v. Calise,174 Conn. 567, 574, 392 A.2d 440 (1978); see also Shokite v. Perez, CT Page 1367919 Conn. App. 203, 207, 561 A.2d 461 (1989); East Haven v. Paranto,2 Conn. App. 449, 454, 479 A.2d 1225 (1984). "A default judgment deprives the client of his day in court, and should not be used as a vehicle for disciplining attorneys." Shepard Claims Servicev. William Darrah Associates, supra, 796 F.2d 195.
The duration of the default is truly extraordinary, nearly three years. This, however, is somewhat deceptive. Once the file had "fallen through the cracks" and neither the motion for default nor the notice had made it to Attorney Echter's file, it was unlikely that the default would be noticed or corrected. Nonetheless, a motion to open the default should nave been filed earlier this year when new counsel assumed responsibility for the file and filed discovery requests.
The court finds that the defendants have a good faith defense to this matter. It also is noteworthy that this is a serious case, a death case, in which the City's exposure is very large. See, e.g., Phillips v. Weiner, 103 F.R.D. 177, 182 (D. Me. 1984). Some courts have also considered whether the attorney responsible for the default was retained by the defendants or by another entity. This factor is not relevant here, since the City is a defendant and the plaintiff's counsel has represented that if the motion is denied, he would take his judgment only against the city and not the individual defendants.
The single most important criteria highlighted by the Supreme Court in Higgins v. Karp, supra, 243 Conn. 508-09, was prejudice to the nondefaulting party. Even culpable conduct[6] has been excused where other factors, such as the absence of prejudice to the innocent party, militate in favor of relief from the default. 10 Moore's Federal Practice § 55.50[1][b][iii], n. 16. Indeed, some federal circuit courts have held that it is an abuse of discretion to deny relief where no prejudice to the opposing part exists. See id.
The plaintiff claims that it has suffered prejudice because in the three years since the defendants have been defaulted the recollection of the defendant police officers, and presumably other police officers, has diminished or evaporated. "Delay alone may thwart plaintiff's recovery or remedy. It may also result n the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion. Moreover, a delay often will impose additional costs on the litigant not in default, as well as other burdens that may be CT Page 13680 unreasonable." 10 Wright, Miller Kane, op. cit., § 2699, pp. 536-37.
Both parties appear to be speculating about the issue of prejudice; no defendant or police officer has been deposed. On this record, the court cannot determine whether the plaintiff would be materially prejudiced by the granting of the motion. Although there are circumstances in the law where prejudice will be presumed, this is not one of them. For this reason, the court defers final action on the motion in the expectation that discovery will proceed. After an adequate record has been established, the defendants will be heard on the issue of whether the plaintiff has been prejudiced. It will be the defendants' burden to establish the absence of such prejudice. Cf. AetnaCasualty Surety Co. v. Murphy, 206 Conn. 409, 419-420,538 A.2d 219 (1988). Upon a final determination of the motion, the court will determine what conditions shall be imposed should the motion be granted, and whether the plaintiff shall be awarded attorneys fees and costs for deposing the defendants.
At this time, the plaintiff is awarded attorneys fees in connection with responding to the defendants' motion. The plaintiff's attorney may submit an affidavit of attorneys fees to the undersigned. Should they desire a hearing on the issue of the amount of fees to be awarded to the plaintiff, the defendants shall make such a request to the undersigned within ten days of their receipt of the plaintiff's affidavit.
BY THE COURT
Bruce L. LevinJudge of the Superior Court