[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION CONCERNING DEFAULTS
The court issues this memorandum of decision to articulate its reasoning in overruling the defendant Seraya, Inc.'s (Seraya) Objection To Motion For Judgment And For Counsel Fees, dated January 2, 2001, and to re-affirm its decision to deny Seraya's motion to open default, dated September 25, 2000 (No. 134). The court heard oral argument on January 2, 2001, and, pursuant to a briefing schedule, the parties presented written submissions thereafter, as follows: Seraya's Memorandum In Support To Reopen Default, dated January 29, 2001, and the plaintiff, Deercliff Homeowners Association's (Deercliff) Objection To CT Page 3132-dh Reconsideration of Motion To Open Default By The Defendant, Seraya, Inc., dated February 13, 2001. Although Seraya's Objection addressed Deercliff's claim for counsel fees, that issue was not the subject of oral argument, nor was it discussed in the parties' subsequent submissions. It remains to be considered when Deercliff's motion for judgment of strict foreclosure appears before the court.
 BACKGROUND
The following discussion describes the pertinent procedural history. Deercliff brought this action to foreclose a claimed lien for unpaid common charges on a lot located in a common interest community located in Glastonbury. Connecticut. Seraya's first counsel filed its appearance on September 25, 1997. On November 3, 1997, more than three years ago, pursuant to Deercliffs motion, Seraya was defaulted for failure to disclose a defense (No. 102). No motion to open this default was filed with the court. Also on November 3, 1997, Deercliff filed a motion forjudgment of strict foreclosure (No. 106).
By motion dated July 16, 1999, Deercliff sought to default Seraya again, this time for failure to respond to its interrogatories and request for production, dated April 27, 1999. By order dated December 13, 1999, this motion was granted by the court (No. 114) (hereinafter the "December 13, 1999 discovery default"). On March 16, 2000, Deercliff again filed a motion for judgment of strict foreclosure (No. 117).
Seraya's second and current counsel then filed his appearance on its behalf on March 22, 2000. in lieu of that of its previous counsel. Seraya's new counsel already also had appeared in the case for the defendant Martha A. Frankel (Frankel), on January 11, 1999. On March 22, 2000, Seraya moved to open the December 13, 1999 discovery default.
On March 29, 2000, Seraya filed a Counterclaim (No. 122). In response, on March 31, 2000, Deercliff filed another motion for default against Seraya, for its failure to file a pleading responsive to Deercliff's complaint of August 20, 1997. The court granted this motion on April 6, 2000 (no. 124) and, on April 17, 2000, it granted Seraya's motion to open the December 13, 1999 discovery default (No. 118).
Thereafter, on July 27, 2000, the court granted Deercliff's motion to strike the counterclaim (No. 128). On August 28, 2000, Deercliff filed a motion for summary judgment against Frankel (No. 130). On the day oral argument on the motion for summary judgment was held, September 18, 2000, Frankel submitted an objection, claiming that Deercliff's CT Page 3132-di assessment of common charges was invalid because Seraya allegedly had been denied the use and enjoyment of the land in question (No. 131). This objection raised issues which had been addressed in the stricken counterclaim.
On the same date, September 18, 2000, although it had never submitted an answer to the complaint, and had not moved to open either of the defaults pending against it (the November, 1997 default for failure to disclose a defense and the April, 2000 default for failure to plead), Seraya filed a request to amend answer, accompanied by a special defense, entitled "Breach of Covenant of Good Faith and Fair Dealing," in which it also raised the previously stricken claim that it had been prohibited from developing the property (No. 132).
The transcript of the oral argument which occurred before the court (Shortall, J.) on September 18, 2000 (hereafter "Tr. at p. ___") demonstrates that Seraya was again put on notice of its defaulted status and the requirement that it show good cause to open the defaults. Seraya' s counsel was present and participated in the oral argument. The court stated, "I find here a motion for default for failure to disclose as to Seraya, Inc., which was granted on November 3, 1997." Tr. at p. 4. Subsequently, the court noted that the December 13, 1999 discovery default had been opened on April 17, 2000. Tr. at p. 6. Then, the court noted that the April 6, 2000 default against Seraya for failure to plead was still in effect. Tr. at p. 7. The court also pointed out that the request for leave to amend answer was not appropriate since there was no previous answer to amend. Tr. at p. 7. The court then stated that Seraya was late in filing an answer responding to the allegations of the complaint. Tr. at p. 8.
At the close of the hearing, the court pointedly advised Seraya as follows: "[o]f course, you're going to have to get the Court's permission to set aside that default because a motion for judgment has been filed. I'm looking at the Practice Book; Section 17-32b, and it says that, if a claim for hearing and damages or a motion for judgment has been filed, the default may be set aside only by the judicial authority. . . . If it comes to me — and I presume any other judge — I'll be looking for good cause. . . ." Tr. at pp. 27-28.
On the same date, September 18, 2000, the court issued its ruling in which it granted summary judgment against Frankel (No. 130). Therein, it also stated that the claim raised in the objection and by the request to amend answer already had been "ruled on as insufficiently related to the foreclosure to be raised in this action," referring to the court's CT Page 3132-dj earlier decision on the motion to strike.
Notwithstanding the court's explicit statement about the need to show good cause to open the defaults, Seraya then filed a motion to open default, dated September 25, 2000, which did not set forth good cause, and which was addressed only to the April, 2000 default for failure to plead. Seraya stated only that it had a valid defense (No. 134). With that motion, it submitted an Answer and Special Defense (No. 133). The Special Defense presented was the same defense that the court, one week before, had determined, once again, to be insufficiently related to the foreclosure to be raised in the action. On October 4, 2000, Deercliff filed its objection to this motion, noting that Seraya had failed to present good cause to open the default entered on April 6, 2000 (No. 135). It also noted the existence of the November, 1997 default.
Seraya's motion to open default and Deercliff's objection appeared on the short calendar for October 16, 2000. The court (Shapiro, J.) issued an order, dated November 3, 2000, denying the motion, in which it noted that a motion for judgment of strict foreclosure had been filed in March, 2000, and, citing rules of practice §§ 17-32 (b) and 17-42, that no good cause to open the default had been shown (No. 134).
On January 2, 2001, Deercliff's motion for judgment (No. 117) appeared on the short calendar. Seraya presented its objection on the day of the hearing. This objection again fails to reference the November, 1997 default. Instead, Seraya claims that the April. 2000 default for failure to plead should not have been granted because Seraya was still in default as a result of the December 13, 1999 discovery default. It ignores the fact that, while it claims it could not file a pleading since it was in default, it filed a counterclaim in March, 2000, when the previous defaults were pending . . . Seraya also claims that the motion forjudgment had been rendered moot when the December 13, 1999 discovery default was opened. In its subsequent Memorandum, Seraya argues also that, when it filed its answer and special defense in September, 2000, the clerk was required to set aside the default for failure to plead. The Memorandum also fails to address the November, 1997 default.
 DISCUSSION
With regard to a default for failure to plead, rule of practice §17-32 (b) provides that "[i]f a claim for a hearing in damages or a motion for judgment has been filed the default may be set aside only by the judicial authority." Here, the record is clear that when Seraya moved to open the April, 2000 default for failure to plead in September, 2000, CT Page 3132-dk Deercliff's motion for judgment of strict foreclosure of March, 2000 had been filed with the court for over six months. Thus, contrary to Seraya's Argument, the clerk could not open the default; it could be set aside only by the judicial authority. Seraya's argument that the April 17, 2000 opening of the December 13, 1999 discovery default vitiated the filing of the motion for judgment is also without merit. It studiously ignores the November, 1997 default.
Concerning the determination as to whether to open a default, rule of practice § 17-42 states: "[a] motion to set aside a default may be granted by the judicial authority for good cause shown upon such terms as it may impose." The court, in its discretion, may consider the presence of mistake, inadvertence, misfortune or other reasonable cause. SeeHiggins v. Karp, 243 Conn. 495, 508, 706 A.2d 1 (1998) (previously cited by the court in its November 3, 2000 order). It may consider "factors such as the seriousness of the default, its duration, the reasons for it and the degree of contumacy involved . . . [as well as] the totality of the circumstances, including whether the delay has caused prejudice to the nondefaulting party." (Internal quotation marks and citation omitted.) Id.
As noted, except for its procedural arguments, which the court addressed above, and its advancement of what it claims are meritorious defenses, which the court addresses below, Seraya has advanced no argument explaining why the defaults should be vacated. It has not even contended, for example, that the November, 1997 default was the result of mistake, inadvertence, misfortune or other reasonable cause. Instead, it has chosen to act as though that court action, taken over three years ago, did not exist. It has done so in the face of being put on notice of it again, by the court, on the record, on September 18, 2000. Deercliff also pleaded the existence of this default in its objection to the September, 2000 motion to open the April. 2000 default for failure to plead.
The failure to timely move to open the November, 1997 default clearly caused needless delay in the progress of the proceedings. This was compounded by the subsequent failure to timely move to open the April, 2000 default. Then, contrary to the court's explicit direction that good cause must be shown to open that default, Seraya failed to do so in its September, 2000 motion. Then, following the court's November 3, 2000 order, Seraya waited until the day of the hearing on the motion for judgment in January, 2001 to file its objection, which once again failed to address the salient issues. CT Page 3132-dl
In addition, Seraya also ignores the effect of its failure to comply with the rules of practice on Deercliff. Seraya's attempted procedural gambits concerning the defaults inordinately delayed the orderly progress of what should have been a relatively straightforward, uncomplicated case.
Finally, the court addresses Seraya's claimed defenses. Seraya's challenges to the calculation of the debt, set forth in its Memorandum, can still be raised at the hearing on the motion for judgment, notwithstanding the fact that Seraya remains in default. See BurrittMutual Savings Bank of New Britain v. Tucker, 183 Conn. 369, 374-375,439 A.2d 396 (1981). Seraya's other claimed defenses appear to be without merit. Seraya's defenses alleging that Deercliff's lien is not prior in right to Frankel's mortgage and challenging the amount claimed in priority were addressed in the court's ruling on the motion for summary judgment. The court stated that General Statutes § 47-258 makes it clear that Deercliff's lien has priority in the amount of $2100 over Frankel's lien. See order dated September 18, 2000 (No. 130). That decision stands as the law of the case. See Carothers v. Capozziello,215 Conn. 82, 107, 574 A.2d 1268 (1990).
Seraya also claims as a defense that an October 15, 1998 letter from Deercliff's attorney set up an unauthorized collection practice. Seraya does not specify the statutory basis for this assertion. Although the court afforded Seraya an opportunity to brief this issue, it has failed to do so in an adequate manner. An issue that is inadequately briefed is deemed abandoned. Commission on Human Rights and Opportunities v.Truelove Maclean, Inc., 238 Conn. 337, 344 n. 11, 680 A.2d 1261
(1996). Likewise abandoned is any argument by Seraya that the amended complaint, filed on November 17, 1997 (No. 107), which did not change the allegations as to Seraya, had an effect on the default previously entered against it.
While the consequences of default are significant, see Costello v.Hartford Institute of Accounting, Inc., 193 Conn. 160, 161 n. 1,475 A.2d 310 (1984), Seraya has offered no meaningful good cause to vacate the defaults. Seraya has had a full opportunity to raise pertinent issues. The previously ordered defaults should not be vacated.
 CONCLUSION
For the reasons stated, the court declines to vacate the defaults. Except for its objection to Deercliff's request for counsel fees, which CT Page 3132-dm is to be considered when Deercliff's motion for judgment of strict foreclosure is heard, Seraya's objection to Deercliff's motion for judgment is overruled. It is so ordered.
BY THE COURT
ROBERT B. SHAPIRO JUDGE OF THE SUPERIOR COURT