[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The court will not attempt to relate the tortuous history of this dispute which first appeared in New Haven Superior Court in 1988. Since then it has found its way to the Supreme Court and twice to the Appellate Court. It is the latter court's remand which this court now addresses in the form of the plaintiff City's application to vacate the arbitration award and the defendant Union's objection to the same.
At issue at this juncture of the case is the question of "why the issue of attorney Grave's authority to bind the city is the basis for vacating the award." (Both parties stipulated as to this language).
 I
Can the City assert that the arbitration award violates public policy although it has failed to allege this in its supplemental application to vacate?
The Union argues that the City is bound by the grounds alleged in its supplemental application to vacate as reasons why the award should be vacated. Nowhere in the supplemental application to vacate does the City mention the term "public policy." Nor does the City specifically allege that Graves lacked authority.
However, case law indicates that, in Connecticut, this claim should be allowed. "The modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically rather than narrowly and technically." Parsons v. United
CT Page 10057Technologies Corporation, 243 Conn. 66, 83, 700 A.2d 655 (1997).
"Although essential allegations may not be supplied by conjecture or remote implication; the complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties." (Citations omitted.)Id.
"As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the complaint is insufficient to allow recovery." Id.
An arbitration award was at issue in Hartford v. Board ofMediation Arbitration, 11 Conn. 7 (1989), a case on point.
The issue was whether it was within the trial court's jurisdiction to base its decision on an issue not expressly raised in the pleadings.
"Although the city did not expressly claim in its application that the award should be vacated on the ground that it violated public policy, the City did allege that the award should be vacated because `[t]he arbitrators have exceeded their powers in violation of General Statutes § 52-418 (a)(4)." Here, the court concluded that "such an allegation is sufficient to include within it a claim relating to the invalidity of the arbitration award on public policy grounds. It was therefore within the trial court's jurisdiction to render judgment in favor of the City on that basis." Hartford v. Board of Mediation Arbitration, supra,211 Conn. 13-14 (1989).
Although the City failed to specifically use the term "public policy," it did cite § 52-418 in its supplemental application to vacate.
The court is also bound to address this issue by the remand order of the Appellate Court.
The entire opinion in City of New Haven v. Local 884, Council 4, AFSCME, AFL-CIO, 44 Conn. App. 764, 694 A.2d 417, cert. denied 241 ct. 915 (1997) focuses on the issue of Grave's lack of authority. In holding that the trial court improperly determined that the City waived its claim that Graves lacked authority to CT Page 10058 bind it to the arbitration ward, the Appellate court remanded to the trial court the issue of determining whether Graves in fact lacked authority.
Higgins v. Karp, 243 Conn. 495, 502, 706 A.2d 1 (1998):
 Well established principles govern further proceedings after a remand by this court. In carrying out a mandate of this court, the trial court is limited to the specific direction of the mandate as interpreted in light of the opinion. . . This is the guiding principle that the trial court must observe. . . It is the duty of the trial court on remand to comply strictly with the mandate of the appellate court according to its true intent and meaning. . . The trial court should examine the mandate and the opinion of the reviewing court and proceed in conformity with the views expressed therein. . ."
(Internal quotation marks omitted.) Id. At 502.
 II
Is the attorney's lack of authority to enter into an arbitration agreement a proper ground for an application to vacate?
A. The Union is not prejudiced by the City's failure to specifically plead the public policy issue in its supplemental application to vacate. The Union was fully aware that the issue of Graves' lack of authority was going to be the issue on remand. Both parties extensively briefed this issue. The Appellate Court left this issue for the trial court to decide when it held that the trial court improperly determined that the city waived its claim that its attorney lacked authority.
In Norwalk v. Board of Labor Relations, 206 Conn. 449,538 A.2d 694 (1988) the court found that the city's representative at the arbitration hearing was without authority to bind the city to the settlement.
In that case, the city's counsel agreed to reinstate the police officer on whose behalf the union had filed the grievance underlying the arbitration hearing. The Norwalk city charter, however, provided that only the police commission is empowered to reinstate terminated employees of the police department. "Where the municipal charter prescribes a particular procedure by which a specific act is to be done or a power is to be performed, that CT Page 10059 procedure must be followed for the act to be lawful."
Though the Norwalk case involved an administrative appeal, and this case involves an application to vacate, similar facts, policies, and rationales are present in both cases.
B. To vacate an arbitration award, the award must be in contravention of "some explicit public policy" that is "welldefined and dominant." Watertown Police Union. Local 541 v.Watertown, 210 Conn. 333, 555, A.2d 406 (1989).
"In spite of the general rule that challenges to an arbitrator's authority are limited to a comparison of the award to the submission, an additional challenge exists under 52-418
(a)(4) when the award rendered is claimed to be in contravention of public policy. "Watertown Police Union. Local 541 v.Watertown, supra, 210 Conn. 339.
"When a challenge to the arbitrator's authority is made on public policy grounds, however, the court is not concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award. Accordingly, the public policy exception to arbitral authority should be narrowly construed and [a] court's refusal to enforce an arbitrator's interpretation of [collective bargaining agreements] is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." (Internal quotation marks omitted.) Id. At 339-40.
"The party challenging the award bears the burden of proving that illegality or conflict with public policy is clearly demonstrated." Id. At 340. "Given the narrow scope of the public policy limitation on arbitral authority, the plaintiff can prevail . . . only if it demonstrates that the board's award clearly violates an established public policy mandate." Id.
 III
A. Does the need for proper authority to enter into an arbitration agreement constitute a "well defined and dominant" public policy?
1. The question of proper authority received prominence in CT Page 10060 the deliberations and decision of the appellate Court in its remand. There, it determined that the trial court improperly determined that the city waived any claim that Attorney Graves lacked authority to bind it to the arbitration award where there was no indication from the record that the city empowered Graves with the express authority to waive any of its claims regarding the extent of this authority.
"It has been well established that a city's charter is the fountainhead of municipal powers . . . The charter serves as an enabling act, both creating power and prescribing the form in which it must be exercised . . . Agents of a city . . . have no source of authority beyond the charter . . ." (Internal quotation marks omitted.) Id. At 768.
"Generally, no officer or board . . . has power to bind the municipal corporation by contract, unless duly empowered by statute, the charter, or authority conferred by the common council, where the latter may so delegate powers. . ." (Internal quotation marks omitted.) Id.
"Where the municipal charter prescribes a particular procedure by which a specific act is to be done or a power is to be performed, that procedure must be followed for the act to be lawful." (Internal quotations marks omitted.) Id.
"The city attorney cannot go beyond the powers conferred upon him . . . Generally he has no authority to compromise claims, so that an unauthorized compromise is not binding on the municipality." (Internal quotation marks omitted.)
"[A]ll who contract with a municipal corporation are charged with notice of the extent of . . . the powers of municipal officers and agents with whom they contract, and hence it follows that if the . . . agent had in fact no power to bind the municipality, there is no liability on the express contract . . ." (Internal quotations marks omitted). Id.
"Thus, every person who deals with [a municipal corporation] is bound to know the extent of its authority and the limitations of its powers." (Internal quotations marks omitted.) Id. "The defendant's counsel testified that she was aware of the settlements with the city attorney where approval is necessary by the board of finance or some other administrative body." Id. p. 769 n. 5. CT Page 10061
Thus, the defendant was aware of the fact that counsel could not bind the city by himself.
The authority issue has been addressed and the standards discussed above set forth in Fennel v. City of Hartford,238 Conn. 809, 813-14, 681 A.2d 934 (1996). Norwalk v. Board of LaborRelations, 206 Conn. 449, 451-52, 538 A.2d 694 (1988) held that, in light of the limitations on the authority to reinstate terminated police department employees contained in the city charter, the trial court correctly concluded that the City's representative at the arbitration hearing was without authority to bind the city to the settlement.
 IV
2. The charter provision relied upon by the city reads:
 It shall be the duty of said board to carefully examine and consider all claims and accounts against the city submitted for its approval and to approve by the signatures of a majority of its members such claims or accounts as it finds to be justly due.
The court finds it logical, reasonable and necessary to include the application the Union filed on behalf of its member to be a "claim". The award in question obligated the city to perform certain acts and to make money payments.
Thus, purposes of the charter were thwarted — the City was deprived of the opportunity to approved claim after determining its validity. The City's taxpayers were deprived of the protection contained in their charter.
Further, the court finds nothing in the charter which would give counsel the authority to bind the City without its approval.
Since the procedure required by the charter was not followed, the award violated the public policy enunciated in the charter.
 V
Is the issue of res adjudicata/collateral estoppel within the scope of the Appellate court's remand? CT Page 10062
A. 1. The union argues that the issue of whether the award should be vacated due to res judicata/collateral estoppel is not properly before the trial court because it does not fall within the scope of the Appellate Court's remand order. The Union's position is that the Appellate Court decided the issue of res judicata/collateral estoppel by ruling that the City could not raise said claim because it failed to provide an adequate record on appeal.
The remand standards have been discussed by our Supreme Court in Higgins v. Karp, 243 Conn. 495, 502, 706 a.2d 1 (1998), as noted above:
"Well established principles govern further proceedings after a remand by [the] court. In carrying out a mandate of [the] court, the trial court is limited to the specific direction of the mandate as interpreted in light of the opinion . . . This is the guiding principle that the trial court must observe . . . It is the duty of the trial court on remand to comply strictly with the mandate of the appellate court according to its true intent and meaning . . . The trial court should examine the mandate and the opinion of the reviewing court and proceeding in conformity with the views expressed therein. . . ." Id. At 502.
"We have rejected efforts to construe our remand orders so narrowly as to prohibit a trial court from considering matters relevant to the issues upon which further proceedings are ordered that may not have been envisioned at the time of the remand." Id.
At 502. In this case, the issue of res judicata/collateral estoppel was envisioned at the time of the remand as illustrated by footnote 3 of 44 Conn. App. 764.
"So long as these matters are not extraneous to the issues and purposes of the remand, they may be brought into the remand hearing." Id. At 502.
2. In the footnote 4 at page 764, the Appellate Court decided not to address the issue of res judicata/collateral estoppel because of the City's failure to provide an adequate record for review. Although the Appellate Court chose not to examine this issue, it did not in any way imply that the trial court could not address this issue.
The issue of res judicata/collateral estoppel is alleged in the City's supplemental application to vacate and is briefed by CT Page 10063 both parties.
The court concludes that this issue is properly to be considered under the remand order.
B. 1. The City argues that the issue of the grievant's reinstatement to the position of Sanitarian had already been resolved in the May 4, 1988 Draft Order (Fracasse, J.), and therefore that the award of October 23, 1991 should be vacated because it was barred by the principles of res adjudicata and collateral estoppel.
The May 4, 1998 Draft Order (which supercedes all previous agreements) does not specifically address the issue of the grievant's employment transfer rights. Rather, the Draft Order represents a temporary compromise between the parties. The Draft order reinstates the grievant into the position of "Caretaker" but specifically states that the grievant "does not waive any of his collective bargaining agreement bumping rights by accepting the position of "Caretaker I." (May 4, 1988 Order, paragraph 6). The May 4, 1988 agreement neither bars nor allows the grievant to transfer to a Sanitarian position. As Judge Hodgson suggests in the July 31, 1989 transcript — the May 4, 1988 Order left the issue of employment transfer open to future resolution through the administrative remedies of the grievance procedure under the contract:
 Well, I don't find that the order of May 4, 1988 says anything about the subsequent transfers. It seems to resolve just the reinstatement issue. But, it appears that the parties at that time agreed that he'd be reinstated to the Caretaker I position. There is in paragraph six of that agreement an indication that he doesn't waive his collective bargaining bumping rights by accepting that position, or, I guess any of his other contractual rights. And it appears to me, that what you're pursuing now is in the nature of this rights under the contract and a claim that, those haven't been honored. . . And that any rights that you're seeking to enforce would be one which would be subject to the duty to exhaust the admistrat[ive] remedies of the grievance procedure under the contract."
The court concludes that the October 23, 1991 proceeding and subsequent award are not barred by virtue of res adjudicata or collateral estoppel. CT Page 10064
 CONCLUSION
Having concluded that neither res adjudicata nor collateral estoppel barred the October 23, 1991 proceeding and award, the court, however, orders that the award be vacated as violative of public policy.
Anthony V. DeMayo, J.T.R.