# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | ID. No. 1507021564 |
| | ) | |
| DIONTE H. DUBOSE, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: March 30, 2016
Decided: April 18, 2016

On Defendant Dionte H. Dubose's Motion to Suppress.
**GRANTED IN PART; DENIED IN PART.**

## ORDER

Barzilai K. Axelrod, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Kevin J. O'Connell, Esquire, Assistant Public Defender, Wilmington, Delaware, Attorney for Defendant Dionte H. Dubose.

**SCOTT, J.**

## Introduction

Before the Court is Defendant Dionte H. Dubose's ("Defendant") Motion to Suppress. Therein, Defendant challenges the validity of police action following an otherwise valid initial traffic stop, which resulted in evidence and charges against Defendant, as having violated his right against unreasonable searches and seizures of his vehicle and his person guaranteed under the Fourth Amendment to the United States Constitution and Article I, Section 6 of the Delaware Constitution and protected by Title 11, chapter 23 of the Delaware Code. The Court has reviewed and considered the Parties' written submissions, as well as the evidence provided and arguments made by the Parties at the suppression hearing.[1] For the following reasons, Defendant's Motion to Suppress is **GRANTED**, in part, and **DENIED**, in part.

## Findings of Fact[2]

On July 28, 2015, at approximately 1:00 am, Delaware State Police Sergeant David Diana ("Sgt. Diana") was patrolling Route 9 in New Castle County as part of the Governor's Task Force initiative of targeting hot spots of criminal activity in certain areas. Sgt. Diana's law enforcement experience includes nearly 15 years

---

[1] Defendant filed his Motion to Suppress on December 21, 2015. The State filed its response on January 13, 2016. The suppression hearing was held on March 30, 2016.

[2] Unless otherwise noted, the findings of facts were made from the testimony of Sergeant Diana and Detective Gliam, which was provided and undisputed at the suppression hearing, as Defendant Dubose was absent from the proceedings and, thus, did not testify nor did he call any fact witness to testify.

1

with the Delaware State Police and nearly four years with the New Castle County Police, throughout which time he has participated in several thousand traffic stops.

On the night in question around 1:05 am, Sgt. Diana was traveling northbound on Route 9 in response to a high number of complaints of criminal behavior in the area, when he observed a vehicle traveling southbound turn onto Rogers Road. Because Sgt. Diana observed that the vehicle had no illuminated lights on the back panel, he initiated an immediate traffic stop for an equipment violation using the light bar and siren on his nonconventional car. Sgt. Diana concluded that without any lights on the back panel and in the darkness, the vehicle was in an unsafe condition and would either have to be towed or parked.

Upon activating the lights and siren, Sgt. Diana observed the passenger, who was seated in the front seat, immediately react to the presence of law enforcement by bending at the waist and dipping his right shoulder to reach underneath the front passenger seat. Based on his past experience, Sgt. Diana interpreted this sudden movement as consistent with the recovering or hiding of an item, such as a handgun, so he elected to approach the driver's side out of concern for his safety.

From his point of approach, Sgt. Diana immediately detected a strong odor of burnt marijuana emanating from the vehicle. He engaged the driver in dialog, introducing himself and requesting identification, and the driver willingly complied. Sgt. Diana identified the driver as Defendant Dubose. Sgt. Diana also requested identification from the passenger, who verbally provided his name,

2

which was later determined to be correct via DELJIS and fingerprints. Sgt. Diana asked the passenger about the marijuana, and he said he smoked marijuana earlier.

As a result of the burnt marijuana odor and the passenger's suspicious actions as the vehicle was being pulled over, Sgt. Diana determined that the passenger presented the most immediate threat and decided to continue his interview with him outside of the vehicle due to his concern for officer safety as it was still a two-on-one situation. Sgt. Diana asked the passenger to step out of the car, and he complied. Sgt. Diana did not handcuff him. At this point, Sgt. Diana was still alone and, thus, opted to leave Defendant in the vehicle with the engine running and the passenger door open, but was able to see him the entire time. At some point, Sgt. Diana recalls directing Defendant to turn off the engine.

While continuing his interview with the passenger outside of the vehicle, Sgt. Diana observed the following behavior from him that continued to elevate his concern about some criminal behavior being afoot: very limited eye contact, looking around into the distance toward the southbound shoulder; fidgeting with his hands; nervously shuffling his feet, and looking over his shoulder across Rogers Road. Sgt. Diana perceived that the passenger's anxiety was building as his stress level increased, and based on his training and experience, he interpreted the passenger's actions as consistent with fight or flight behavior. He was also concerned that there was a weapon within the driver's wingspan with which the passenger might be able to rearm himself if he returned to the vehicle.

3

While Sgt. Diana was engaged in this traffic stop, Delaware State Police Detective Jeffrey Gliem ("Det. Gliem") was engaged in another traffic stop a short distance away. Det. Gliem has nearly 10 years experience with the Delaware State Police and at the time in question was assigned to the Governor's Task Force. When he received Sgt. Diana's call for backup, Det. Gliem terminated his traffic stop and proceeded to Sgt. Diana's scene, which he could see from his location.

Sgt. Diana relayed to Det. Gliem that he needed to do a safety sweep underneath the passenger seat. Det. Gliem testified that, based on his experience in working with Sgt. Diana over 100 times in the past, he assumed Sgt. Diana was directing him to perform a safety sweep for a weapon because of the tone of concern that he detected in Sgt. Diana's voice, even though the word "weapon" was not specifically mentioned. Det. Gliem also noted that at this time, while he stood outside of the vehicle, he smelled burnt marijuana coming from the passenger compartment, as if someone had just smoked marijuana in the car.

As the passenger door was open, Det. Gliem poked his head inside of the vehicle and looked under the passenger seat. He observed a large handgun lying on its side with its barrel pointing toward the trunk and its handgrips facing the right door. Det. Gliem perceived the handgun's orientation as being consistent with a right-handed person having placed it under the seat. Without mentioning that he had found a gun, he then instructed Sgt. Diana to take the passenger into custody, which Sgt. Diana did, and ordered Defendant, who remained in the

4

driver's seat, to show his hands. Det. Gliem then slowly talked Defendant out of the car and placed him into custody.

Det. Gliem testified that Defendant was under detention because he didn't sign a warrant for his arrest. He testified that he detained Defendant based on the odor of burnt marijuana, the weapon in the car, and for safety reasons. Det. Gliem then proceeded to pat him down and found 10 bags of marijuana in his front pocket. He then put Defendant in handcuffs and stood him behind the vehicle, while the officers conducted what Det. Gliem described as an inventory search, after which Defendant was put into a unit car and the vehicle was towed. Det. Gliem testified that every time a car is towed, they conduct an inventory search. Sgt. Diana also testified that whenever a car is towed by the Delaware State Police, an inventory search is performed in order to safeguard the property and inventory the contents in case there is a claim later that an item was destroyed or stolen.

Det. Gliem testified that he searched the entire vehicle at the scene and found a second gun inside the vehicle's trunk. This gun's serial number appeared to have been scratched off.

Sgt. Diana remained on the scene until the vehicle was towed to Troop 2.

### Parties' Contentions

Defendant argues that the warrantless searches of the vehicle violated his constitutional rights, because neither were supported by probable cause nor complied with any applicable exception to the warrant requirement. Defendant

5

further argues that the warrantless search of his person violated his constitutional rights, because it was neither supported by reasonable suspicion to suspect that he was armed and dangerous nor probable cause arrest him in the first place.

The State argues that the officers had sufficient reasonable suspicion to perform a limited protective search underneath the passenger seat of the vehicle. The State also argues that probable cause existed to search the entire vehicle, including the trunk, based on the odor of burnt marijuana, and to arrest Defendant and search him incident to the arrest, based on the odor of burnt marijuana and the concealed handgun found underneath the passenger seat. Alternatively, the State argues that the doctrine of independent discovery applies to the handgun found inside the trunk, as a result of the inventory search.

## Standard

On a motion to suppress evidence seized during a warrantless search, the State bears the burden of establishing that the challenged search or seizure did not violate the rights guaranteed a defendant by the United States Constitution, the Delaware Constitution, and Delaware statutory law.[3] The burden of proof on a motion to suppress is proof by a preponderance of the evidence.[4]

---

[3] *Hunter v. State*, 783 A.2d 558, 560-61 (Del. 2001).
[4] *State v. Anderson*, 2010 WL 4056130, at *3 (Del. Super. Oct. 14, 2010) (citing *State v. Bien-Aime & Smalls*, 1993 WL 138719, at *3 (Del. Super. Mar. 17, 1993).

6

## Discussion

An individual's right to be free from unlawful governmental searches and seizures in Delaware is secured by two independent sources.[5] The Fourth Amendment of the United States Constitution guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."[6] Likewise, Article I, Section 6 of the Delaware Constitution guarantees that "[t]he people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures . . . ."[7] Searches and seizures are presumptively unreasonable, unless they are authorized by warrants or fall under a recognized exception to the warrant requirement.[8]

Where it is shown that there has been a violation of a defendant's right to be free from illegal searches and seizures, the exclusionary rule acts as the remedy.[9] The rule requires that any evidence recovered or derived from an illegal search and seizure must be excluded from evidence, in the absence of an independent source for or a situation allowing for the inevitably discovery of the evidence.[10]

---

[5] This right has been codified by title 11, chapter 23 of the Delaware Code. 11 Del. C. § 2301 *et seq.*

[6] U.S. Const. amend. IV. The Fourteenth Amendment makes the Fourth Amendment applicable to the states. *See Mapp v. Ohio*, 367 U.S. 643, 655 (1961).

[7] Del. Const. art. I, § 6.

[8] *Mason v. State*, 534 A.2d 242, 248 (Del. 1987).

[9] *Jones v. State*, 745 A.2d 856, 872 (Del. 1999).

[10] *Id.* (citations omitted).

7

## A. Searches Following the Traffic Stop

A traffic stop is regarded as "a seizure of a vehicle and its occupants by the State," and is only reasonable if supported by reasonable suspicion of criminal activity or probable cause to believe that a traffic violation has occurred. [11] Reasonable suspicion means an officer's ability to point to specific and articulable facts which, combined with all rational inferences, reasonably warrant the intrusion. [12] It was made clear at the suppression hearing that Defendant concedes that the initial traffic stop was proper, and it appears to the Court that Defendant also concedes that the stop was properly extended because of the odor of marijuana. According to defense counsel, Defendant's point of contention, however, arises at least at the moment Sgt. Diana instructed Det. Gliem to search under the passenger seat, if not earlier when the passenger admitted to smoking marijuana. Defendant argues that this course of action constituted an illegal search, because the officers fail to articulate any reasonable basis to suspect that Defendant was armed and dangerous or that he illegally possessed a firearm. The State argues that the officers had both reasonable suspicion to conduct a limited protective search of the vehicle and probable cause to search the entire vehicle under the automobile exception.

---

[11] *Caldwell v. State*, 780 A.2d 1037, 1045 (Del. 2001); *see Whren v. U.S.*, 517 U.S. 806, 810 (1996); *U.S. v. Brigoni-Ponce*, 422 U.S. 873, 880-81 (1975) (citing *Terry v. Ohio*, 392 U.S. 1, 16-19 (1968)); *State v. Rickards*, 2 A.3d 147, 151 (Del. Super. 2010), *aff'd*, 30 A.3d 782 (Del. 2011).
[12] *Coleman v. State*, 562 A.2d 1171, 1174 (Del. 1989).

## 1.    Limited Search of Vehicle

The Court finds, however, that proper analysis of the legality of the search underneath the passenger seat implicates the issue of whether the officers' suspicions that the *passenger* was armed and dangerous were reasonable. In the context of an investigatory detention, it has been long held that police officers may conduct a limited protective search for concealed weapons under certain circumstances.[13] The issue is "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."[14] Because a detention is not an arrest, the possibility of access to weapons in the vehicle is not mooted by an officer interviewing a suspect outside of the vehicle, because if not arrested the suspect may return to the vehicle after the interview is completed.[15] Therefore, so long as officers possess "an articulable and objectively reasonable belief that the suspect is potentially dangerous" and the protective search does not excessively invade the defendant's rights, their search of the vehicle will comport with the scope of a *Terry* stop and will be reasonable.[16]

The record reflects that in the course of issuing a citation for the traffic violation, Sgt. Diana uncovered facts that independently and reasonably warranted

---

[13] *Nash v. State*, 295 A.2d 715, 717 (Del. 1972) (citing *Adams v. Williams*, 407 U.S. 143, 146 (1972)); *see also Michigan v. Long*, 463 U.S. 1032, 1049 (1983) (holding that when no arrest is made, officers may search the car if they reasonably believe the suspect is dangerous and may gain immediate control of weapons).

[14] *State v. Wausnock*, 303 A.2d 636, 637 (Del. 1973) (citing *Terry*, 392 U.S. at 27).

[15] *See id.*; *State v. Campbell*, 2015 WL 5178407, at *2 (Del. Super. Aug. 28, 2015) (citing *Long*, 463 U.S. at 1051).

[16] *Campbell*, 2015 WL 5178407, at *3 (citing *Long*, 463 U.S. at 1051).

9

additional investigation into the possibility that criminal activity was afoot.[17] These same facts also begin to form the basis for Sgt. Diana's belief that under the circumstances his safety was in danger. The Court finds that the testimony of Sgt. Diana regarding his observations of the passenger when he first initiated the traffic stop and when he conducted the roadside interview of the passenger to be credible, especially in light of Defendant's failure to present any evidence to the contrary.

Therefore, under the facts and circumstances here, Sgt. Diana was warranted in his belief that his safety was in danger. Sgt. Diana testified that it appeared to him based on his experience that the passenger had either retrieved or hidden something, possibly a weapon, when he initiated the traffic stop. He further testified that he removed the passenger from the vehicle to continue his roadside interview based on his evaluation that he presented the immediate threat and he was still alone on the scene at this point, and that during the interview the passenger exhibited further suspicious behavior.

This scenario is similar to the facts in *State v. Wausnock*, where our Supreme Court found that a limited protective search of a vehicle during a traffic stop where the driver was seen reaching underneath his seat was reasonable.[18] In *Wausnock*, while following the defendant's car prior to initiating the traffic stop, the officers

---

[17] *Terry*, 392 U.S. at 8; *Jones*, 745 A.2d at 861; *see Tann v. State*, 21 A.3d 23, 26 (Del. 2011) ("Any investigation of the vehicle or its occupants beyond that required to complete the purpose of the traffic stop must be supported by independent facts sufficient to justify the additional intrusion.").
[18] *Wausnock*, 303 A.2d at 637.

10

"saw the defendant bend down and reach under the driver's seat three or four times" with his right arm, which gave them a strong idea that the defendant might possibly be reaching for a gun.[19] Upon stopping the car, the officers immediately searched under the seat to find drug paraphernalia, and the court found that the "officers, as reasonably prudent men in the totality of the circumstances, had good cause to experience fear for themselves or others and, thus, the limited protective search conducted was reasonable.[20] Applying the same rationale here, this Court finds that the limited protective search conducted underneath the passenger seat of the vehicle was reasonable under the circumstances and did not violate Defendant's constitutional rights. Therefore, the Court does not reach the State's alternative argument that the officers had probable cause to search underneath the passenger seat for contraband based on the passenger's movements, admission, and nervous behavior, and, thus, the search was reasonable under the automobile exception, though it would likely have found the argument to have merit. Accordingly, Defendant's Motion to Suppress the evidence consisting of the handgun found underneath the passenger seat of the vehicle is **DENIED**.

## 2. Search of Defendant's Person

Next, Defendant argues that Det. Gliem's search of his person was unlawful, because there was neither any indication that he was armed and dangerous when

---

[19] *Id.*
[20] *Id.*

11

Det. Gliem patted him down nor any probable cause to arrest him. The State argues that at this moment Defendant was not being detained but was already under arrest and, thus, Det. Gliem lawfully searched Defendant under the search incident to arrest exception to the warrant requirement. Because the scope of the pat down cum search of Defendant differs depending on his status, as detainee or arrestee, the Court must first make a factual finding based on the entire record as to Defendant's status as of the time Det. Gliem patted him down.

The distinction between an arrest and an investigatory detention depends upon the nature and the degree of the intrusion occasioned by the particular encounter.[21] "[A]t some point in the investigative process, police procedures qualitatively and quantitatively can be so intrusive with respect to a subject's freedom of movement and privacy issues as to trigger the full protection of the Fourth and Fourteenth Amendments."[22] Delaware cases have identified the following factors as pertinent to the analysis: (1) the amount of force used by the police; (2) the need for such force; (3) the extent to which the individual's freedom of movement was restrained; (4) the physical treatment of the individual, including whether handcuffs were used; (5) the number of agents involved; (6) the duration of the stop; and (7) whether the target of the stop was suspected of being armed.[23]

---

[21] *State v. Biddle*, 1996 WL 527323, at *7 (Del. Super. Aug. 9, 1996), *aff'd*, 712 A.2d 475 (Del. 1998), (citing *U.S. v. Roper*, 702 F.2d 984, 985 (11th Cir. 1983)).
[22] *Id.* at *6 (citing *Hayes v. Florida*, 460 U.S. 811, 815-16 (1985)).
[23] *Id.* (citing *U.S. v. Perea*, 986 F.2d 633, 645 (2d Cir. 1993)).

12

The Court finds Sgt. Diana's testimony, as the officer who made the initial traffic stop and initiated the roadside interviews, that he considered the passenger to be the "immediate threat" under the circumstances and, thus, addressed him first and left Defendant in the car with the engine running but within sight, credible and relevant to the instant inquiry. When asked about the running engine, Sgt. Diana testified that he could not recall exactly when he instructed Defendant to turn it off but that he believes he did so before Det. Gliem conducted the protective search underneath the passenger seat. Det. Gliem's testimony corroborates this belief.

In order to determine whether a seizure is an investigatory detention or an arrest, courts must examine "the reasonableness of the level of intrusion under the totality of the circumstances."[24] Defendant argues and the evidence establishes that Defendant was compliant throughout the traffic stop, roadside interview, investigatory detention, and arrest, and that the passenger was the one who admitted to smoking the marijuana and failed to provide identification. These facts comport with the relatively non-intrusive treatment, *i.e.*, the nature and degree of the intrusion, occasioned by Defendant while he was being detained in his vehicle, as he was allowed to remain in his vehicle alone. Therefore, the Court finds that Defendant was merely being detained at this point, *i.e.*, before the handgun was found underneath the passenger seat.

---

[24] *Id.* at *7 (citing *Posr v. Doherty*, 944 F.2d 91, 98 (2d Cir. 1991)).

13

Because the circumstances changed once the gun was discovered underneath the passenger seat, the Court must further analyze the reasonableness of the level of intrusion to Defendant in order to determine whether the seizure of Defendant then became an arrest. The Court finds the testimony of Det. Gliem regarding the moments after he found the handgun underneath the passenger seat credible and relevant to the status of Defendant at this time. The pertinent facts are as follows: (i) based on Sgt. Diana's safety concerns, Det. Gliem looked underneath the passenger seat of the vehicle; (ii) at this time, Defendant was seated in the driver's seat; (iii) Det. Gliem saw a handgun underneath the passenger seat; (iv) Det. Gliem immediately told Sgt. Diana to take the passenger into custody; (v) Sgt. Diana then placed handcuffs on the passenger and put him into a unit car (vi) Det. Gliem then ordered Defendant to show his hands and talked him out of the vehicle; (vii) at that point, Det. Gliem had decided to detain Defendant based on the odor of burnt marijuana, the handgun he had just seen, and for officer safety; (viii) Det. Gliem then patted Defendant down for the same reasons; (ix) Det. Gliem found marijuana in Defendant's pant pocket; and (x) Det. Gliem then handcuffed Defendant and stood him behind the vehicle while a complete search of the vehicle was made.

Though the record shows that the officers' relative treatment of Defendant escalated throughout the course of the detention, it appears to the Court that such intrusions reasonably correlated to the officers' discovery of the passenger's suspicious behavior and the gun hidden underneath the passenger seat. Before the

14

pat down, Defendant was never handcuffed and was allowed to remain in the vehicle without direct supervision. Further, the officers' testimony indicated that Defendant was cooperative and that his behavior was otherwise unremarkable. Once the handgun was discovered underneath the passenger seat, however, it appears to the Court that the officers took reasonable steps under the circumstances to protect themselves, which included restraining Defendant's access to the vehicle and making sure he was not in possession of another weapon. As a result, this Court finds that the intrusions did not trigger the full protection of the Fourth Amendment, and, thus, Defendant was merely being detained and was not under arrest when he was patted down. Therefore, having determined that Defendant's status was as a detainee, the Court will proceed with its analysis under *Terry* and its progeny and not, as the State argues, under the search incident to an arrest exception.

As discussed above, under certain circumstances it is permissible during a lawful detention for law enforcement officers to conduct a protective pat down of a defendant, but only if "the officer justifiably believes the detained individual may be in possession of a weapon or weapons that could be used to harm the officer."[25] While the test for "justification" is "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was

---

[25] *Woody v. State*, 765 A.2d 1257, 1266 (Del. 2001) (citing *Terry*, 392 U.S. at 30-31); *see also Adams*, 407 U.S. at 145-46 (noting that "the patdown is designed not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence . . . .").

in danger," the intrusion must be founded upon "the officer's ability to point to *specific* and *articulable facts*."[26]  In this case, Det. Gliem testified that he discovered a large handgun hidden under the passenger seat and that Defendant had been sitting alone in the vehicle prior to its discovery.  Sgt. Diana also testified that it was after one o'clock in the morning when he initiated the traffic stop, and that it was his job to patrol high crime areas.  Under the circumstances, the Court finds that the officers articulated a justifiable belief that Defendant may have been in possession of a weapon, which led them to fear for their safety, and, accordingly, the decision to conduct a pat down was proper.

The scope of a protective pat down is initially limited to the suspect's outer clothing, but the officer may go into the suspect's pocket if he initially feels something he reasonably believes to be contraband or a weapon in that pocket.[27] Under the plain touch doctrine, "an officer may go into a suspect's pockets if pursuant to a lawful pat down he feels an item that he concludes with reasonable certainty is contraband."[28]  In this case, however, there is no testimony whatsoever from Det. Gliem, who conducted the pat down of Defendant, as to what he felt before he went into Defendant's pocket.  Therefore, this Court cannot conclude that Det. Gliem had any reasonable belief that Defendant had either a weapon or

---

[26] *Caldwell*, 770 A.2d at 531.
[27] *Id.* (citing *Minnesota v. Dickerson*, 508 U.S. 366 (1993)); *see Terry*, 392 U.S. at 29-30; *Dickerson v. State*, 620 A.2d 857 (TABLE), 1993 WL 22025, at *2 (Del. Jan. 26, 1993).
[28] *Id.*

16

contraband in his pocket that would support extending the protective pat down of Defendant to a search inside of Defendant's pocket. This pat down, though reasonable at its inception, thus, turned into an unreasonable search. Accordingly, Defendant's Motion to Suppress the evidence consisting of marijuana found on his person is **GRANTED**.

## B.    Search of Vehicle's Trunk[29]

Under the automobile exception to the warrant requirement under the Fourth Amendment, when police have probable cause to believe that an automobile is carrying contraband or evidence, they may search the vehicle without obtaining a search warrant.[30]    Probable cause exists where, under the totality of the circumstances, the facts known to the officers, as those versed in the field of law enforcement, are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found.[31] The standard is of only a "fair probability" of criminal activity, which is less than a preponderance of evidence.[32] Therefore, under the automobile exception, if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the

---

[29] Notwithstanding the Court's finding that the search of Defendant's person was unconstitutional, the Court considers the search of the vehicle's trunk as independent of and unrelated to the search of Defendant's person and, thus, is not properly considered as fruit of the poisonous tree.

[30] *Tatman v. State*, 494 A.2d 1249, 1251 (Del. 1985) (citation omitted).

[31] *Illinois v. Gates*, 462 U.S. 213, 243-244 (1983);*Tolson v. State*, 900 A.2d 639, 643 (Del. 2006); *Gardner v. State*, 567 A.2d 404, 409 (Del. 1989); *Thompson v. State*, 539 A.2d 1052, 1055 (Del. 1988).

[32] *State v. Maxwell*, 624 A.2d 926, 928 (Del. 1993) (citations omitted).

vehicle and its contents that may conceal the objects of the search.[33]  It has long been recognized by courts that the scope of this search is broader than others, allowing for searches for evidence relevant to offenses other than the offense of arrest,[34] so long as there is probable cause to believe that evidence may be found in the places searched.[35]

Defendant's primary argument here is that "a full search of the vehicle was not warranted since the weapon had already been located."[36]  In support of this contention, Defendant cites *Gant v. Arizona*; however, the Court finds that Defendant's reference to this case is inapposite, because the *Gant* court addressed the search incident to an arrest exception to the warrant requirement, which search is limited to the passenger compartment of a vehicle.[37]  Defendant also supplied the Court with a Tenth Circuit case, *United States v. Nielsen*, which stands for the proposition that the odor of burnt marijuana in a vehicle alone, when uncorroborated by the eventual search of the trunk and when performed after a consented-to search of the passenger compartment produced no evidence to support the officer's suspicions, is insufficient to establish probable cause to search the vehicle's trunk.[38]  Lastly, Defendant argued at the suppression hearing that Delaware law requires proof of an exigency in order for the automobile exception

---

[33] *State v. Manley*, 706 A.2d 535, 539 (Del. Super. 1996) (citations omitted).
[34] *Id.*
[35] *U.S. v. Ross*, 456 U.S. 798, 824 (1982).
[36] Def.'s Mot. Supp. at 5.
[37] *Arizona v. Gant*, 556 U.S. 332, 343 (2009).
[38] *U.S. v. Nielsen*, 9 F.3d 1487, 1491 (10th Cir. 1993).

to apply. His contention and reliance on the *Carroll* doctrine is misplaced, as Delaware no longer requires a proof of a particular exigency as the mobility of an automobile is a sufficient exigency to satisfy the requirement.[39] Thus, this argument is without merit.

The Court finds the following facts, when viewed from the standpoint of an objectively reasonable police officer, relevant to its analysis of the challenged sufficiency of probable cause to search the trunk for contraband or evidence in this case: (1) the time of night in which the incident took place; (2) the "hot spot" location in which the incident took place; (3) the odor of burnt marijuana in the passenger compartment, which remained even after the passenger exited the vehicle; (4) the evasive behavior of the passenger observed by Sgt. Diana as he initiated the traffic stop; (5) the passenger's admission to having smoked marijuana earlier; (6) the suspicious behavior of the passenger observed by Sgt. Diana during the roadside interview; (7) the large handgun found by Det. Gliem underneath the passenger seat; and (8) the arrest of, at least, the passenger for the concealed handgun.

By directing this Court to use the *Nielsen* case as a guide, Defendant fails to acknowledge that probable cause must be measured by the totality of the

---

[39] *State v. DePasquale*, 1991 WL 138429, at *2 (Del. Super. July 18, 1991) (citing *U.S. v. Nixon*, 918 F.2d 895, 903 (11th Cir. 1990); *U.S. v. Panitz*, 907 F.2d 1267, 1270-71 (1st Cir. 1990)); *see also Tatman*, 494 A.2d at 1252-53 (holding that there is no requirement that the warrantless search of a vehicle occur contemporaneously with its lawful seizure) (citing *Texas v. White*, 423 U.S. 67, 68 (1975)).

circumstances. Thus, the Court must consider all of the facts known to the officers when they searched the trunk, regardless of their state of mind at the time, in determining whether there was "probable cause to believe that [the contraband or evidence] may [have been] found" in the trunk.[40] Therefore, the Court finds that the *Nielsen* case is distinguishable, because the circumstances of the case at bar include more than just an odor of marijuana and do not include a consented-to-search of the passenger compartment that did not reveal any contraband or evidence of criminal activity.

In *Baxter v. State*, the Delaware Supreme Court held that the defendant driver's admission to officers that he possessed a handgun in his vehicle alone established probable cause to search the entire vehicle.[41] In doing so, the Supreme Court relied on its prior holding in *Ledda v. State*. In *Ledda*, the driver admitted to having a machete in the trunk of the vehicle which prompted the Supreme Court to hold that "[u]pon learning of the concealed machete, the officers had probable cause to conduct a probing search of all compartments and containers within the vehicle, including the trunk, which may have concealed other weapons."[42] Therefore, this Court finds that there was sufficient probable cause to believe contraband or evidence of criminal activity would be found in the trunk to justify Det. Gliem's warrantless search, once he discovered the handgun concealed

---

[40] *See Maryland v. Pringle*, 540 U.S. 366, 371 (2003); *Ross*, 456 U.S. at 824.
[41] *Baxter v. State*, 788 A.2d 130 (TABLE), 2002 WL 27435, at *2 (Del. Jan. 3, 2002).
[42] *Ledda v. State*, 564 A.2d 1125, 1129 (Del. 1989).

underneath the passenger seat and in light of the passenger's behavior throughout the course of the evening, the odor of burnt marijuana, the time of night, and the location of the stop. Accordingly, Defendant's Motion to Suppress evidence found as a result of the search of the vehicle's trunk is **DENIED**.

## C. Inventory Search

Because the Court has determined that both of the searches of the vehicle were reasonable, it does not reach the question of whether the doctrine of inevitable discovery based on the officers' alleged inventory search of the vehicle applies to the facts and circumstances of this case.

## Conclusion

For the foregoing reasons, Defendant's Motion to Suppress is hereby **GRANTED, IN PART, AND DENIED, IN PART.**

**IT IS SO ORDERED.**

**Judge Calvin L. Scott, Jr.**

cc: Prothonotary

21